*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-004

APRIL TERM, 2015

| | |
|---|---|
| In re M.H. and B.H., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 112-9-12/10-1-14 Bnj |

Trial Judge: William D. Cohen

In the above-entitled cause, the Clerk will enter:

Father appeals termination of his parental rights to his two children, M.H. and B.H., born in March 2012 and December 2013 respectively. On appeal, father argues that the court erred in placing responsibility on father for his lack of contact with his children. We affirm.

Based on the parties' stipulations that the children were without proper parental care, the court adjudicated each child as in need of care or supervision (CHINS) when less than a year old—M.H. in October 2012 and B.H. in March 2014. The children were placed in the custody of the Department for Children and Families (DCF). In May 2014, DCF filed petitions to terminate parental rights. This was a post-disposition modification for M.H. and an initial disposition for B.H. Mother agreed to relinquish her rights contingent on termination of father's rights.

After a hearing, the court found the following. Father has been continuously incarcerated since July 2013. The Department of Corrections (DOC) calculates his minimum release date as July 2018; father contends that he has a potential minimum release date of June 2016. Because of his incarceration, father has had minimal contact with M.H. and no contact at all with B.H. The DCF caseworker testified that he did not make arrangements for the children to be brought to prison to visit father because father was facing a long prison term and would not be able to work on reunification efforts. The court determined that this was a reasonable decision.

The court concluded that there was a change of circumstances based on mother's relinquishment of her rights and father's stagnation, as exhibited by his continuous absence from the children's lives and lack of compliance with the case plan.

The court further concluded that termination was in the children's best interests. The court explained that for two young children, time is essential. The court found that father has no relationship with B.H. insofar as father has been incarcerated for the entirety of B.H.'s life, and that father's relationship with M.H. has not been productive. Father has not played a constructive role in the children's lives. The children are adjusted to their current foster home, and M.H. is making improvements on bonding issues in their care. Most importantly, the court found that given father has no real experience as a parent, has played no constructive role in the children's lives, has had no personal contact with B.H., and will be incarcerated for the foreseeable future, there is no likelihood that father will be able to resume or assume full-time parenting of the children in a reasonable period of time, and granted termination. Father appeals.

Where there is a prior disposition order, "the court must find a substantial change in material circumstances and that it is in the best interests of the child that all parental rights be terminated." In re J.T., 166 Vt. 173, 177 (1997). Parental rights can also be terminated at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests. Id. at 177, 179. In both circumstances, the statutory criteria guide the court's analysis of the children's best interests. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). The reasonableness of the time period is measured from the child's perspective. In re B.M., 165 Vt. 331, 337 (1996). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

On appeal, father argues that the court erred in concluding that father was responsible for his lack of contact with his children. Father contends that his lack of contact was not a result of his incarceration, but of DCF's decisions regarding contact. Father asserts that DCF could have allowed him telephone contact or visits with the children to facilitate a relationship with them.

Father fails to demonstrate that his lack of contact with the children was due to factors beyond his control. As the trial court found, father's lack of a relationship with M.H. and B.H. was due to father's criminal activity that resulted in his incarceration for long periods of time. Father's unavailability was thus a result of his own criminal behavior, a matter wholly within his control. See In re D.S., 2014 VT 38, ¶ 26 (explaining that "father's incarceration is a proper consideration in the court's analysis of father's fitness pursuant to the statutory standard" because parent is responsible for behavior leading to incarceration); In re K.F., 2004 VT 40, ¶ 12, 176 Vt. 636 (mem.) (explaining that father bore responsibility for his frequent incarceration and therefore lack of bond with child). The court found that it was reasonable for DCF to determine not to bring very young children to visit a father with whom they have never had a significant relationship and who could not be a realistic placement. The court acknowledged father's progress in obtaining his GED, participating in programming, and being compliant with DOC requirements, but ultimately concluded that father would not be able to resume parenting within a reasonable period of time. Given the children's young age and need for permanency, and father's lack of any relationship with children and incarceration, this finding was adequately supported by the evidence, and in turn supports the court's decision to terminate father's rights.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

2